IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA

EDGERRIN JAMES BILLIE,
    Plaintiff,
vs.

Civil Action No.:
Judge:

ERIC T. BRASHAERS, in his Official and individual capacity;
ROBERT SUNKEL in his Official and individual capacity;
ANTHONY CIVITA, in his Official and individual capacity; and
ERIC FLOWERS, in his Official and individual capacity.

## COMPLAINT

### PRELIMINARY STATEMENT

1. This an action brought under 42 U.S.C. §1983 and the laws of the State of Florida to hold the Indian River County Sheriff's Office, via its policy maker including specifically three of its officers accountable for their unreasonable, unlawful, malicious violations of the Plaintiff's rights.

2. The action stems from the deliberate and malicious warrantless intrusion by the Indian River Sheriff's Office into the Plaintiffs home without cause and on the basis that he was a member of a Native American Indian Tribe.

3. The actions taken by Defendants are of a grave concern, not only to the Plaintiff but to society as a whole and calls upon the exercise of inherent rights under the United States Constitution and the ability of citizens to be reasonably secure from unreasonable searches, seizures, and surveillance inside their homes.

## JURY TRIAL

4. The Plaintiff Edgerrin James Billie hereby requests a trial by jury.

## JURISDICTION AND VENUE

5. This Complaint seeks remedies pursuant to 42 U.S.C. §§1983 and 1988, alleging violations of the First and Fourth Amendments to the Constitution of the United States of America, as well as the laws of the State of Florida.

6. Jurisdiction is conferred upon this Honorable Court pursuant to 28 U.S.C §§1331,1343, and 1367.

7. Venue is proper before this Honorable Court pursuant to 28 U.S.C. §1391(b).

## PARTIES

8. The Plaintiff, **Edgerrin James Billie** (the "Plaintiff"), is a resident of Okeechobee County, Florida and at all times relevant hereto, resided in Florida.

9. At all times relevant hereto, Defendant **Eric T. Brashear** ("Brashear") was employed by the Indian River County Sheriff's Office and is named in his individual capacity. Defendant upon information and belief is believed to have lived or resided in Indian River County at all times pertinent to this Complaint.

10. At all times relevant herein, Defendant **Robert Sunkel** ("Sunkel") was employed by the Indian River County Sheriff's Office and is named in his individual capacity. Defendant upon information and belief is believed to have lived or resided in Indian River County at all times pertinent to this Complaint.

11. At all times relevant herein, Defendant **Anthony Civita** ("Civita") was employed by the

Indian River County Sheriff's Office and is named in his individual capacity. Defendant upon information and belief is believed to have lived or resided in Indian River County at all times pertinent to this Complaint.

12. At all times relevant herein, Defendant **Eric Flowers** ("Flowers") was the Sheriff for Indian River County, and its "policymaker," as contemplated by the governing laws pertinent to this action, and is named in his official capacity.

## ALLEGATIONS OF FACT

13. On the morning of October 30, 2022, the Plaintiff, **EDGERRIN JAMES BILLIE**, was unlawfully shot with pellets and removed from his home by members of the Indian River Swat Team.

14. Prior to being shot at by the Indian River Swat Team the SWAT used a Teradyne armored vehicle to breach the window of the bedroom of Plaintiffs house so a drone could be flown inside the Defendant's house.

15. The incident stems from a scorn older lover hell bent on controlling and scamming on the Plaintiffs tribal dividends.

16. Plaintiff had recently purchased his first home located in Vero Beach, Florida.

17. On the evening of October 29, 2022, his ex-lover and her daughter showed up uninvited and unannounced travelling several miles from her home in Broward County, Florida.

18. In an effort to remove himself from the volatile situation the ex-lover was creating the Plaintiff left the home and went drinking sending the ex-lover into a fit of rage.

19. Upon arriving home, the Plaintiff went to sleep on the kitchen floor because the ex-lover was occupying his bedroom.

20. Sometime after passing out after a long night of hard drinking the ex-lover finally left the Plaintiffs home with her daughter.

21. The ex-lover did return to her home in Broward County, Florida, rather she drove up the street and calling 911 and falsely reported that the Plaintiff was suicidal.

22. Defendant ERIC T. BRASHEARS arrived at the 7-11 around 7:22 am and met ex-lover. The ex-lover alleged that the Plaintiff had stayed out of the house all evening and had returned approximately 45 minutes prior to 911 being contacted. That upon returning to his home the Plaintiff had grabbed a kitchen knife and stood roughly 5-6 feet away from the ex-lover and allegedly stated that he was going to "Kill himself along with slitting the throats of ex-lover and ex lover's child's father." The ex-lover claimed she immediately took her child and left Plaintiffs house.

23. The ex-lover denied being harmed or physically touched by the Plaintiff. The ex-lover continued about Plaintiffs native American ancestry and how she was trying to hospitalize him. Then the ex-lover leads up to the final statement when the ex-lover alleged that she feared if the police knocked on the door Plaintiff would commit "suicide by cop." See copy of Case Report attached hereto as Exhibit" I" and made part of this Motion through this reference.

24. The only statement of the ex-lover was captured on Defendant BRASHEARS body cam. It is crystal clear in viewing the statements on the body cam that a crime had not been committed and that the ex-lover had no ownership to the house. Nonetheless Defendant BRASHEARS contacted his supervising officer, and it was decided on the "totality of the circumstances" that the Indian River Sheriff's Office hereinafter referred to as ("IRSO") SWAT team and Crisis Negotiation Team would be sent to the Plaintiff's residence.

25. Defendant SUNKEL, who at that time was a member of the Indian River Crisis

Negotiation Team called out over the loudspeaker for the Plaintiff to" come out his house." This interaction is also caught on the bodycam worn by Defendant SUNKEL, and it is important to note that at no time in using the loudspeaker to call out to the Plaintiff, did Defendant SUNKEL or any other law enforcement on the scene announce that Plaintiff was under arrest or that the IRSO had the authority to command the Plaintiff to leave his house, in fact the body camera footage of Defendant SUNKEL actually captures the exact opposite, Defendant SUNKEL is captured on the body cam stating over the loud speaker "you are not in trouble, we just want to talk to you." See Case Supplemental Report attached hereto as Exhibit "2" and made part of this Complaint through this reference.

26. Deposition testimony taken of the Defendants in the state court criminal proceeding along with bodycam footage of Defendants shows that IRSO SWAT used a Teradyne armored vehicle to breach the window of the bedroom so a drone could be flown inside the Plaintiff's house. After breaking out the Defendant's window the SWAT team then breached the front door armed with neither an arrest warrant or a search warrant and the started shooting pepper balls at the Plaintiff, who was in a heavy sleep on the floor.

27. The Defendants all gave deposition testimony wherein the stated the law allowed them to take any means to enter the home because Plaintiff would not come outside when they were asking him to. All Defendants conceded in deposition testimony that at no time did they make any attempts to procure either a search warrant for Plaintiffs house or an arrest warrant.

28. The IRSO swat team led by Defendant, Civieta , broke through the Plaintiff s front door and because he was in a state of deep sleep, began shooting pellets at him without ever announcing their purpose or getting his consent to be in his house.

29. Plaintiff was arrested without incident and charged with one count of aggravated assault

with a deadly weapon and an additional count of resisting arrest without violence. Later, the Defendant was charged by capias for one count of false imprisonment, and an additional charge of felon in possession of a firearm.

30. After the Plaintiff was taken into custody Defendant BRASHEARS returned to the Plaintiff's property and supervised the ex-lover along with her child's father remove all of the Plaintiff's electronics, tools, clothing, shoes and personal items.  The ex-lover was not on a deed, lease or a bill, however Defendant BRASHEARS determined because based on undated photos and messages, and in contradiction to Plaintiff's own words to Defendant BRASHEARS that ex-lover was a vindictive ex-girlfriend and they were not together gave the ex-lover and her boyfriend to remove any and every piece of property that was valuable.

31. Defendant BRASHEAR testified in his deposition that because the ex-lover alleged, she was the Plaintiff's fiancé who had ownership of Plaintiff's house and items therein.

32. The state court judge after hearing the testimony of all officers involved, including the Defendant's hereto along with the ex-girlfriend, determined all evidence seized in the illegal search and seizure of the Plaintiffs house was obtained illegally.  After the trial court's announcement, the prosecutor announced a null prose.

33. Adding insult to injury on November 1, 2022 the Defendant Flowers made a statement to the media alleging "that Billie refused to come out and hid inside his home armed with a knife." This was a known false statement.  Defendant went on further to state that the Plaintiff "with no regard for any one's life but his own , threatened the life of his family and neighbors while barricading himself in his home with a weapon."  The Plaintiff was asleep at all times the Defendants were outside, he was not under arrest and had no obligation to come outside, he was never found with a weapon, and the ex-lover and her child were not his family.

34. The Plaintiff now turns to this Court in the pursuit of justice.

## CLAIMS FOR RELIEF

### COUNT I
**(42 .US.C. §1983 - Violation of the 4th Amendment of the United States Constitution.)**

35. The Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-34, as if fully set forth herein.

36. All Defendants, while acting under the color of the law, violated Plaintiff's constitutional rights by unreasonably seizing Plaintiff and using excessive force against him, as described herein throughout, which resulted in Plaintiff's injuries.

37. All Defendants actions violated the constitutional rights guaranteed to Plaintiff by the Fourth Amendment of the United States Constitution.

38. All Defendants actions were not taken in good-faith and were in violation of clearly established law.

39. All Defendants used excessive force at the time he unreasonably and unlawfully Invaded the Plaintiffs damaging it then shot him while he was sleeping. The Defendant's actions, each of them, were unnecessary, unreasonable, unlawful, and unjustified.

40. As a direct and proximate result of the Defendants' unreasonable and unlawful actions, the Plaintiff has suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, medical bills, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, disfigurement, and physical pain and suffering.

41. Because Defendants actions, and possibly other employees, agents, and/or representatives of the IRSO, were "motivated by evil motive or intent" and/or "involve[d] a reckless or callous indifference to the federally protected rights of the Plaintiff," an award of

punitive damages is appropriate to the fullest extent permitted by law. See *Morning v. Dillon Cty.*, No.: 4:15-cv-03349-RBH-TER, 2018 U.S. Dist. LEXIS 163072, at *12 (D. S.C. Jun. 12, 2018)(quoting S*mith v. Wade*, 461 U.S. 30 (1983)).

## **COUNT II**

### **(Intentional Infliction of Emotional Distress)**

42.  The Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-34, as if fully set forth herein.

43.  By invading Mr. Billie's home while he was asleep, breaking out his windows and then shooting at him unannounced, Defendants engaged in actions that were atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency.

44.  Defendants acted with the intent to inflict emotional distress or acted recklessly when it was certain or substantially certain that emotional distress would result from their outrageous conduct.

45.  Defendant's actions caused Mr. Billie to suffer severe emotional distress as he was being beaten for no reason.

46.  The emotional distress Mr. Billie experienced was so severe, no reasonable person could be expected to endure it.

47.  As a direct and proximate result of the Defendants' unreasonable and unlawful actions, the Plaintiff has suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, medical bills, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, disfigurement, and physical pain and suffering.

48.  The actions of Defendants against the Plaintiff were carried out with

   a. actual malice and/or

   b. a conscious, reckless, and outrageous indifference to the health, safety, and welfare of others, thereby justifying an award of punitive damages to the fullest extent permitted by law.

## COUNT III

### (The Fifth Amendment to the United States Constitution)

49. The Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-34, as if fully set forth herein.

50. The United States Supreme Court has consistently hailed the sanctity of one's home as a right to be fervently guarded and has notably used strong language in doing so.

51. In *Florida v. Jardines,* 133 S. Ct. 1409(2013), the Court explained, "At the Amendment's 'very core' stands 'the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.' " Id.

52. Without any reason other than Plaintiff's failure to not come outside his home which he is lawfully entitled to refuse to do, the Defendant's escalated their search and seizure of Plaintiff.

53. Depriving a citizen of a right (in this case, his freedom to leave) in response to his invocation of another right (the right to remain silent) is a violation of that other right.

54. Defendant Indian River County Sheriff's Office is responsible for the training of all Indian River County Sheriff's Office officers.

55. The fact that none of the officers objected to the search is prima facia evidence that this was not simply a case of an officer failing to use good judgment, but rather entire sheriff's office failure to properly train as to the requirements of their duties.

56. This charge is levied against the Indian River County Sheriff's Office, who is liable for

their failure to train their employees, and against each of the Defendants in their individual capacities.

## PRAYER FOR RELIEF

**WHEREFORE**, PLAINTIFF prays for the following relief:

    a.    Actual and punitive damages against the Indian River Sheriff's Office totaling $10,000,000.00.

    b.    Actual and punitive damages against all individual of $500,000.00 each.

    c.    Cost of the action.

    d.    Reasonable attorney's fees.

    e.    Any other such relief as the court deems appropriate.